[No. 8117. In Bank. — October 30, 1886.]

## LELAND STANFORD, RESPONDENT, v. J. J. FELT ET AL., APPELLANTS.

WATER RIGHTS — DIVERSION — RETURN OF WATER — FINDINGS. — In an action to restrain the diversion of water from a certain creek, the findings on the issue as to whether the water, after its diversion, was returned to the bed of the creek or not, *held*, too indefinite and uncertain to sustain the judgment restraining the diversion.

APPEAL from a judgment of the late District Court of the Twelfth Judicial District for the county of San Mateo, and from an order of the Superior Court of that county refusing a new trial.

The plaintiff is the owner of a tract of land lying on the bank of the San Francisquito Creek, and the defendants of another tract through which flows the Trancos, a tributary and feeder of the San Francisquito. The action was brought to restrain the defendants from continuing a certain reservoir constructed by them across the Trancos Creek, in such a manner as to divert the natural flow of the waters thereof from the lands of the plaintiff. A judgment was rendered perpetually enjoining the defendants from diverting any of the waters of the creek or discharging any part thereof into the reservoir. The further facts are stated in the opinion of Mr. Justice Thornton.

*Edward J. Pringle*, and *P. G. Galpin*, for Appellants.

*W. H. L. Barnes*, for Respondent.

THORNTON, J. — By the common law of England, the right of the riparian proprietor to the flow of a stream is inseparably annexed to the soil and passes with it, not as an easement or appurtenance, but as part and parcel of it. Use does not create the right, and disuse cannot destroy or suspend it. The right of such proprietor ex-

tends to the natural and usual flow of all the water of the stream, unless when the quantity has been diminished as a consequence of the reasonable use or appropriation of it by other riparian owners for proper and legitimate purposes. (*Ferrea* v. *Knipe,* 28 Cal. 340; S. C., 87 Am. Dec. 128; *Lux* v. *Haggin,* 69 Cal. 255.) The use by the riparian owner of the water for domestic purposes for irrigation and for the propulsion of machinery are recognized as proper and legitimate purposes. This we regard as the law of this state. (See *Ferrea* v. *Knipe* and *Lux* v. *Haggin, supra.*) It appears to be law that where all the water of a stream is needed for domestic purposes and for watering cattle, and is thus consumed by one proprietor, the law allows such use.

But in making such reasonable use of water, such proprietor must return the surplus which remains after such use to the natural channel of the stream (*Dilling* v. *Murray,* 6 Ind. 324; S. C., 63 Am. Dec. 385; 3 Kent's Com. 439; *Miller* v. *Miller,* 9 Pa. St. 74; S. C., 49 Am. Dec. 545; Gould on Waters, 213); and if this is not done, the diversion will be restrained at the suit of a riparian owner below. Nor is the owner lower down the stream required to show, in order to procure an injunction, any actual present damage. The diversion by lapse of time may grow into a right. (*Crandall* v. *Woods,* 8 Cal. 136; *American Co.* v. *Bradford,* 27 Cal. 360; Gould on Waters, sec. 214; *Moore* v. *Clear Lake W. W.,* 68 Cal. 146; L. R. 19 Ch. 451; L. R. 7 H. L. 697.) To prevent such result, an injunction will be awarded. (*Parker* v. *Griswold,* 17 Conn. 287, affirming 13 Conn. 279.)

It appears from the findings in this case that water has been diverted from the stream, on which both plaintiff and defendants are riparian proprietors, but as to the fact whether it has been returned or not, the finding is as follows:—

" That except by natural gravitation, and in the summer time over dry lands, no means of returning water

diverted from the said Trancos Creek to its bed has ever existed, and none are provided by the defendant Felt.

" That no return of any water so diverted as aforesaid is, or ever has been, usually made, and from personal inspection of the premises, I am satisfied that in the dry season of the year no such return of said waters has ever been made, and that none can be made under existing circumstances, except by so opening the defendant Felt's reservoir, or the short six-inch pipe, which passes through the head thereof, and above mentioned, so as to rapidly exhaust its contents and render it practically of no use, and a source of inconvenience, if not injury, to the use of his property; at all events, from my inspection of the premises, it is evident that while the outer end of the discharge pipe from said reservoir was open on the day I visited the premises, and was then discharging a torrent of water through the defendant Felt's lands, in the direction of the Trancos Creek, which plowed the ground and made traveling uncomfortable, there had been no such previous customary discharge, and there was no visible indication of any connection or habitual flow between the waters of the reservoir and the bed of the creek ever having been maintained at any time, and I find as a fact that no return of discharged water, or any portion of it, has been usually made to the bed of the creek by the defendant Felt."

From the language employed here, it is left in doubt whether the finding, " that no return of any water so diverted as aforesaid is, or ever has been, usually made," is based on the testimony given in the case, or on facts ascertained by the personal inspection of the premises by the learned judge who made the finding. In such a state of the case, ought a judgment based on a diversion and no return of the water diverted (for such is the character of the judgment here) be rendered ?

In *Wright* v. *Carpenter*, 49 Cal. 609, it was held that an instruction which authorized the jury to take into con-

sideration the result of their own examination of the land in controversy which they were sent by the court to inspect, in determining its character as swamp and overflowed or otherwise, was erroneous. The court made the following observations in regard to the instruction:—

" In authorizing the court to send the jury to view the premises in litigation, it was not the purpose of the statute to convert the jurors into silent witnesses, acting on their own inspection of the land, but only to enable them the more clearly to understand and apply the evidence. If the rule were otherwise, the jury might base its verdict wholly on its own inspection of the premises, regardless of an overwhelming weight of evidence to the contrary, and the losing party would be without a remedy by motion for a new trial. It would be impossible to determine how much weight was due to the inspection by the jury as contrasted with the opposing evidence, or (treating the inspection as in the nature of evidence) whether it was sufficient to raise a substantial conflict in the evidence. The cause would be determined, not upon evidence given in court, to be discussed by counsel and considered by the court in deciding a motion for a new trial, but upon the opinions of the jurors founded on a personal inspection, the value or the accuracy of which there would be no method of ascertaining." (See also *Wright* v. *Carpenter*, 50 Cal. 556.)

The reasons above given which render it error for a jury to base its verdict on evidence derived from a personal inspection of the land involved in the action tried before them, are equally cogent when applied to a judge making such inspection. The findings of fact made should be upon the oral and documentary testimony introduced at the trial, and not on any fact ascertained by the judge of the court on an examination of the premises involved in the controversy. As the finding above quoted may and appears to have been on the testimony in the cause and on facts discovered by the judge on the

inspection above referred to, we cannot regard it as a finding that the water diverted has not been returned as the law requires. In such a state of the case, a judgment which is manifestly based on the fact that the water has been diverted and not returned cannot be regarded as proper.

It may be contended from some of the other findings that the water has been detained for some space of time. but as the defendant Felt is a riparian proprietor, he has a right to such a reasonable detention of the water in the use of it. The reasonableness of the detention is involved in the question of reasonable use. Whether the use of water is reasonable or not, is always a question of fact to be determined by the court below. Whether, then, the water is reasonably or unreasonably detained, must be a question of fact, and all such questions are to be determined by the tribunal above mentioned. Whether Felt in using the water has made an unreasonable detention of it, has not been clearly and distinctly found, and in this state of the case this court cannot act upon it as a fact in the cause.

It must be remembered that no injunction can be awarded which can deprive the defendant of the reasonable use of the water for domestic purposes and for the support of life.

For the reasons given above, the judgment and order must be reversed and the cause remanded for a new trial.

Ordered accordingly.

McKinstry, J., Myrick, J., McKee, J., and Sharpstein, J., concurring. — We concur in the judgment. In our opinion, the findings are too uncertain and indefinite to sustain the judgment of the court below.