[L. A. No. 1629.   Department One.—January 19, 1907.]

ANAHEIM UNION WATER COMPANY, and SANTA ANA VALLEY IRRIGATION COMPANY, Respondents, v. O. B. FULLER, G. H. FULLER, FRED ZUCKER, and F. J. SMITH, Appellants.

Riparian Rights—Bottom Lands on Each Side of River.—The owners of wide bottom lands, through which a river flows, lying between high lands or bluffs on each side, have riparian rights therein.

Id.—Land Beyond Watershed.—Land which is not within the watershed of the river is not riparian thereto, and is not entitled, as riparian land, to the use or benefit of the water from the river, although it may be part of an entire tract which does extend to the river.

Id.—Union of Streams—Lands above Junction.—Where two streams unite, each, in regard to riparian rights, is to be considered a separate stream respecting lands abutting thereon above the junction, and land lying within the watershed of one stream above that point is not to be considered as riparian to the other stream. The facts that the streams are of different sizes and that both of them lie in one general watershed or drainage basin, and that they are separated by the summit or crown of a comparatively low tableland, do not change this rule.

Id.—Loss of Riparian Rights—Conveyance of Non-Abutting Land.—If the owner of a tract of land abutting on a stream conveys to another a non-contiguous part of the tract, he thereby cuts off the part conveyed from all participation in the use of the stream and from riparian rights therein, unless the conveyance declares the contrary. Land thus severed from the stream can never regain the riparian right, though subsequently reconveyed to an abutting owner.

Id.—Contiguity of Non-Abutting Land to Underground Flow.—The contiguity of land which does not abut on the surface stream of the river to the underground flow or percolation of the stream does not carry with it the right of the owner to divert water from the surface stream and transport it to his land across intervening land, to the injury of lands which abut on the proper banks of the surface stream, even though such non-abutting land is within the watershed.

Id.—Injunction against Improper Diversion of Stream — Actual Damage Immaterial.—A lower riparian proprietor may enjoin an improper diversion of the stream above him by non-riparian owners, which operates as a legal injury to his rights, without being required to make any showing of present actual damage. It is sufficient to support the injunction that the unlawful diversion may by lapse of time grow into an adverse right.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying a new trial. Benjamin F. Bledsoe, Judge presiding.

The facts are stated in the opinion of the court.

E. W. Freeman, for Appellants.

E. E. Keech, Richard Melrose, John D. Pope, and A. W. Hutton, for Respondents.

SHAW, J.—This is an action to enjoin the defendants from diverting water from the Santa Ana River. Judgment in favor of the plaintiffs, as prayed for, was given in the court below. The defendants appeal from the judgment and from an order denying their motion for a new trial.

The plaintiffs own lands through which the Santa Ana River flows. They have been accustomed for many years to irrigate this land with waters from the river, and for that purpose there is required during the irrigating season a continuous flow of four hundred miner's inches of water. The defendants, or some of them, own land on the river, situated above the land of the plaintiffs, and upon it they had built a dam in the river and were thereby diverting water from the stream, which, by means of a ditch, they were conducting to other lands owned by them and were there using it for irrigation. The plaintiffs claim, and the court found, that the land which the defendants were thus irrigating with water from the river was not riparian thereto. The sufficiency of the evidence to support this finding, and the question whether or not the plaintiffs' land is entitled to riparian rights in the river, are the principal questions presented upon the appeals.

1. The defendants claim that the land of the plaintiffs lies within, and constitutes a part of, the bed of the stream, and contend that such land is not riparian, nor, as such, entitled to the use of the water of the stream. It appears that the land consists of good soil, capable of producing valuable crops; that it abuts on the river, and that it has been successfully cultivated and irrigated by the plaintiffs and their predecessors for many years. The only facts upon which the claim that it is non-riparian is based are that it forms part of the wide bottom extending between higher lands

or bluffs on each side; that the course of the river channel is subject to changes by unusual floods, although no substantial change has occurred for forty years last past, and that the land is all underlaid by an underground flow in contact with and forming a part of the surface stream. We are of the opinion that land thus situated is not to be distinguished from other land abutting on the stream, so far as the right of the owner to the reasonable use of the water is concerned. We know of no principle of riparian rights that would except such land from its benefits, nor of any decision to that effect. The opinion in *Ventura L. and P. Co.* v. *Meiners,* 136 Cal. 284, [89 Am. St. Rep. 128, 68 Pac. 818], contains nothing that can be so construed. It appears to decide that land may be riparian to a stream, although it does not abut thereon except when the stream is swollen by floods. Without conceding the soundness of the decision so far as it seems to decide that the owner of such land may take water from the stream at its ordinary flow as against other owners whose lands abut upon such ordinary stream, we think it is clear that the discussion in the opinion as to the character of the ground lying between the edge of the stream at its ordinary flow and the line of high water when in flood, has no reference to the right of the owner of such intervening land, as a riparian owner, to use the water of the stream for any useful purpose which his position upon the stream enables him to make of it. The land here involved was not at all similar to the land described in the opinion in that case. The case of *Diedrich* v. *North Western Union Ry. Co.,* 42 Wis. 264, [24 Am. Rep. 399], is not in point. It refers to the rights of the owner of land lying wholly under the bed of a navigable lake, and holds that such owner may not erect wharves or other structures thereon which would interfere with navigation, and that in that respect he has not the right of one owning land along the bank of such lake to erect wharves in aid of navigation for his own use. There is nothing in that opinion to indicate that the owner of land which was under the bed of an ordinary stream might not, by virtue of the position of his land, have such benefit from the water as he could get from it. This question, however, is not involved in the case at bar, for we are of the opinion that the plaintiffs' land was not in the bed of the stream in any proper sense of the term.

2. Some distance below the land of the plaintiffs a tributary known as Chino Creek enters the Santa Ana River. Chino Creek also has a tributary known as Mill Creek, which enters Chino Creek one and one-half miles above the confluence of the latter with the Santa Ana River. The defendants take the water from the river, above the land of the plaintiffs, in a ditch which extends across the low bottom to the high land or bluff and then extends along the bluff at a grade less than that of the river, gradually getting further above and away from the river until it reaches and crosses the divide, or summit of the elevated land, between the river and Mill Creek. The court found that the land irrigated with water from this ditch lies beyond this divide and is wholly within the watershed of Mill Creek, and that it does not abut upon the stream of the Santa Ana and is not riparian thereto. Land which is not within the watershed of the river is not riparian thereto, and is not entitled, as riparian land, to the use or benefit of the water from the river, although it may be part of an entire tract which does extend to the river. (*Chauvet* v. *Hill*, 93 Cal. 410, [28 Pac. 1066]; *Bathgate* v. *Irvine*, 126 Cal. 135, [77 Am. St. Rep. 158, 58 Pac. 442]; *Southern Cal. I. Co.* v. *Wilshire*, 144 Cal. 68, [77 Pac. 767]; *Watkins L. Co.* v. *Clements*, 98 Tex. 578, [107 Am. St. Rep. 653, 86 S. W. 733].)

The defendants claim that these findings are contrary to the evidence and that this rule does not apply to the land they seek to irrigate, because, while it is wholly within the Mill Creek watershed, it is also within the general watershed of the Santa Ana River, considered as an entirety including the valley and the slopes leading thereto from its sources to its mouth. This fact does not affect the case, at least so far as the land of the plaintiffs is concerned. The principal reasons for the rule confining riparian rights to that part of lands bordering on the stream which are within the watershed are, that where the water is used on such land it will, after such use, return to the stream, so far as it is not consumed, and that, as the rainfall on such land feeds the stream, the land is, in consequence, entitled, so to speak, to the use of its waters. Where two streams unite, we think the correct rule to be applied, in regard to the riparian rights therein, is that each is to be considered as a

separate stream, with regard to lands abutting thereon above
the junction, and that land lying within the watershed of
one stream above that point is not to be considered as riparian
to the other stream. The fact that the streams are of differ-
ent size, or that both lie in one general watershed or drainage
basin should not affect the rule, nor should it be changed by
the additional fact that the two watersheds are separated
merely by the summit or crown of a comparatively low table-
land, or *mesa,* as it is called in the evidence, and not by a
sharp or well-defined ridge, range of hills, or mountains. The
reasons for the rule are the same in either case. In some cases
it may be difficult to distinguish the line of separation. This
seems to have been a case of that sort. Nevertheless, we think
there is evidence sufficient to support the finding of the court
that there is a dividing line between the two watersheds and
that the land irrigated by defendants lies upon the slope which
descends into Mill Creek. It is not necessary to discuss this
evidence in detail.

The evidence also supports the finding that the land irri-
gated by the defendants does not abut upon or extend to the
river. If the owner of a tract abutting on a stream conveys
to another a part of the land not contiguous to the stream,
he thereby cuts off the part so conveyed from all participation
in the use of the stream and from riparian rights therein,
unless the conveyance declares the contrary. Land thus
conveyed and severed from the stream can never regain the
riparian right, although it may thereafter be reconveyed to
the person who owns the part abutting on the stream, so that
the two tracts are again held in one ownership. (*Boehmer*
v. *Big Rock C. I. Dist.,* 117 Cal. 26, [48 Pac. 908]; *Alta
Land Co.* v. *Hancock,* 85 Cal. 229, [20 Am. St. Rep. 217, 24
Pac. 645]; *Lux* v. *Haggin,* 69 Cal. 424, [10 Pac. 674]; *Wat-
kins L. Co.* v. *Clements,* 98 Tex. 578, [107 Am. St. Rep.
653, 86 S. W. 738, 835]; 2 Farnham on Waters, 1572, sec.
463a.) All the land belonging to the defendants, including
the Smith tract, which was in part irrigated, was originally a
part of the Jurupa Rancho, which abutted upon the river.
The original owner of that rancho subdivided it by arbitrary
lines, corresponding to the government surveys, and sold and
conveyed it in parcels according to that survey. Under the
rule above stated, the conveyance by him of a tract not con-

tiguous to the stream would sever such tract from the riparian interest and deprive it of subsequent participation in the use of the water of the river, the right to which previously attached to the entire rancho. The tract which includes the irrigated land of the defendants is not at any point contiguous to the river. At the time the action was begun it was owned by the defendant, Smith. He was not the owner of any adjoining land which lay contiguous to the river. After the action was begun he conveyed this land to certain of the other defendants, some of whom owned adjoining lands extending from the Smith land to the river. This subsequent conveyance gave those defendants a continuous ownership of land extending from the river to and including the Smith land. This contiguous ownership, however, did not confer upon the Smith land the riparian rights of which it was deprived when Smith, or his predecessors, obtained it by a conveyance which severed it from the portion of the Jurupa Rancho abutting upon the river.

It seems to be contended that, for the purpose of determining what lands are riparian, the river is to be considered as including all the space through which its underground flow extends, as well as that occupied by the surface stream. It is claimed by the appellants, and apparently conceded by the respondents, that the Smith tract at one or two of its angles extends into the low bottom under which the underground water flows or percolates, and upon this circumstance riparian rights are asserted to accrue. It is not necessary here to decide what rights to the use of the underground flow of a stream may, by virtue of its position, attach to land which abuts upon or extends into or over such waters, but does not extend to the surface stream. We are certain that such location of the land, with relation to the stream, does not carry the right to divert water from the surface stream, conduct or transport it across intervening land to the tract thus separated from such surface stream, and there apply it to use on the latter to the injury of lands which abut upon the proper banks of the surface stream, and, hence, that even if the Smith land were all within the watershed, such location upon the underground flow does not justify the diversion the defendants were making from the surface stream for use upon that tract.

3. It is further contended that the plaintiffs' land is in no-wise damaged by the diversion complained of, and hence that the diversion cannot be enjoined. Upon this proposition the decisions of this court, and the general principles of law regarding injunctions, are against the theory of the defendants. In *Southern Cal. I. Co.* v. *Wilshire,* 144 Cal. 68, [77 Pac. 767], speaking of the right of a lower riparian proprietor to enjoin a diversion of a part of the stream for use outside of the watershed of the stream, leaving enough in the stream for any use which had theretofore been made, or was then proposed to be made, by the lower riparian proprietor on his land, the court said: "It is not necessary in such cases, for the plaintiff to show damages, in order that it may be entitled to a judgment. It is enough if it appears that the continuance of the acts of the defendants will deprive it of a right of property, a valuable part of its estate. The taking of the water beyond the watershed would, therefore, be an injury to the plaintiff's riparian right which, under the pleadings and findings in the case, the plaintiff was entitled to have enjoined," citing *Moore* v. *Clear L. W. Co.,* 68 Cal. 146, [8 Pac. 816] ; *Stanford* v. *Felt,* 71 Cal. 249, [16 Pac. 900] ; *Heilbron* v. *Fowler S. C. Co.,* 75 Cal. 426, [7 Am. St. Rep. 183, 17 Pac. 535] ; *Conklin* v. *Pac. I. Co.,* 87 Cal. 296, [25 Pac. 399] ; *Walker* v. *Emerson,* 89 Cal. 456, [26 Pac. 968] ; *Spargur* v. *Heard,* 90 Cal. 221, [27 Pac. 198]. All of these authorities fully sustain the proposition to which they are cited. In *Stanford* v. *Felt,* 71 Cal. 249, [16 Pac. 900], the court says: "Nor is the owner lower down the stream required to show, in order to procure an injunction, any actual present damage. The diversion, by lapse of time, may grow into a right [citing authorities]. To prevent such result, an injunction will be awarded." The same proposition is reiterated in the other cases. The defendants, in opposition to the above decisions, cite the case of *Modoc L. and L. Co.* v. *Booth,* 102 Cal. 151, [36 Pac. 431], and *Vernon I. Co.* v. *Los Angeles,* 106 Cal. 243, 256, [39 Pac. 762]. In the Modoc case, however, it appeared that "during the months of June, July, August and September, when respondent used the small quantity of water appropriated by him, the full flow would have worked an injury rather than a benefit to appellants, and they sought to avoid the injury by maintaining expensive diverting and drain-

age works,'' to turn off the water and keep their lands from being overflowed. The decision was evidently based on the doctrine, stated in some of the decisions, that a diversion of water during times of extraordinary floods which does not perceptibly diminish the stream below will not be enjoined. (*Edgar* v. *Stevenson,* 70 Cal. 286, [11 Pac. 704]; *Heilbron* v. *76 Land and Water Co.,* 80 Cal. 194, [22 Pac. 62]; *Fifield* v. *Spring Valley W. W.,* 130 Cal. 552, [62 Pac. 1054]; Black's Pom. Water-Rights, sec. 75.) Unless it can be so reconciled, the case is contrary to all the other decisions of this court above cited and to the settled principles of law, and must be disregarded. In *Vernon I. Co.* v. *Los Angeles,* 106 Cal. 243, [39 Pac. 762], the plaintiff was not claiming any injury or damage by virtue of his riparian ownership, but was asserting the right to divert water for use upon lands not riparian, against the city of Los Angeles, which was asserting its pueblo right, and what was said in that case with respect to the necessity of showing injury must be taken with the qualifications made evident by the character of the case and by the concurring opinion of Mr. Justice McFarland. The conditions existing in those cases do not exist in the case at bar. The court finds, on sufficient evidence, that the diversion of the defendants, if allowed, would render plaintiffs' land much less fertile and valuable. The defendants do not propose to limit the diversion to times of high water, but, on the contrary, they will take it during the time of its greatest scarcity. There is no question of the diversion of flood water involved in the case. The right which they assert is the right to take the ordinary water of the stream, and hence the doctrine of the Modoc case does not apply.

On this point the defendants cite several cases in which it is held that a lower riparian owner cannot enjoin a diversion by another riparian proprietor above, unless he can show that such diversion works damage to him and that it is more than a just proportion of the water to which the upper owner is entitled. Such decisions are not applicable to this case. Riparian owners have correlative rights in the stream, and neither is a trespasser against the other until he diverts more than his share and injures and damages the other thereby. Here the defendants were not, with respect to the land irrigated, riparian owners, but were trespassers on plaintiffs'

property rights from the beginning, and the continuance of the trespass for a sufficient time would divest the right of the plaintiffs with respect to the water diverted. The same distinction exists with respect to cases cited involving the taking of percolating water for use by one owner upon his land, to the detriment of other land over the same saturated plane. The rights in such cases are correlative, and if an injunction can issue at all therein, it can be only when one owner takes more than his due proportion and damage to the other ensues from such excessive taking.

The defendants urge, inasmuch as the plaintiffs need but four hundred inches of water for their land, and there remained in the stream after defendants' diversion more than two thousand inches, which flows down to and beyond the plaintiffs' land, and which is more than they can possibly use thereon, that it therefore follows that no damage can ever ensue, even if the diversion is unlawful and should ripen into a prescriptive right by continuance, and, hence, that their diversion should not be enjoined. The theory of the law of riparian rights in this state is that the water of a stream belongs by a sort of common right to the several riparian owners along the stream, each being entitled to sever his share for use on his riparian land. The fact that a large quantity of water flows down the stream by and beyond the plaintiffs' land does not prove that it goes to waste, nor that the plaintiffs are entitled to take a part of it, as against other riparian owners or users below. Nor can it be said that plaintiffs, on account of the present abundance, could safely permit defendants to acquire, as against them, a right to a part of the water. The riparian right is not lost by disuse, and other riparian owners above may take, or others below may be entitled to take, and may insist upon being allowed to take, all of the stream, excepting only sufficient for the plaintiffs' land. In either alternative, the taking of a part of the water by the defendants would not leave enough for the plaintiffs' use. There is nothing in this case to show how much water is required above and below by those having rights in the stream. In view of the well-known aridity of the climate and the high state of cultivation in the vicinity, the court could almost take judicial notice that in years of ordinary rainfall there is no surplus of water in the stream over that used by the

various owners under claim of right. But, however this may be, it is settled by the decisions above cited that a party, situated as the plaintiffs are, can enjoin an unlawful diversion, in order to protect and preserve his riparian right.

The findings support the judgment, and we are unable to perceive any substantial or material·conflict in them. We find no error in the record.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.