[No. 20956. Department One. October 8, 1928.]

WILBUR S. YEARSLEY, *Appellant,* v. A. T. CATER *et al.,*
*Respondents.*[1]

*Voorhees & Canfield,* for appellant.

*Pettijohn & McCallum* (*Ray F. Cater,* of counsel),
for respondents.

FRENCH, J.—The appellant brought an action for
damages and injunctive relief against the respondents,
for diverting the waters of Crab Creek, thus injuring
appellant's growing crops then being produced by
irrigation. The trial court dismissed appellant's ac-
tion and quieted respondents' right to the waters of
Crab Creek, and this appeal follows:

The facts of the case, briefly stated, show that, in
the year 1876, or perhaps shortly prior thereto,
George and Donald Urquhart, as a partnership, used
some of the land in controversy in this action for
raising hay. At that time they had only a squatter's
right. Thereafter, by various methods, they acquired

[1]Reported in 270 Pac. 804.

title to the land of respondents and a portion of the land now owned by appellant. They were quite actively engaged in the cattle business; and some fifteen years after they started their cattle business, another brother, John, joined them and worked for them for some time. In 1895, Donald Urquhart sold his interest in the partnership to his brother George, and thereafter the younger brother, John Urquhart, acquired some interest, the exact nature and extent of which does not fully appear.

At the time Donald withdrew from the partnership, title to certain of the lands stood in his name, and title to other portions stood in the name of George Urquhart. In 1910, John and George Urquhart sold certain lands now in controversy to William McCue, and in 1913 respondent Cater acquired from McCue his present holdings. In 1910 John Urquhart acquired, by purchase from the Northern Pacific Railway Company, the north half of the southeast quarter of Section 12, Township 22 North, Range 30 East, in Grant county.

At the time George and John Urquhart conveyed the main body of their lands, consisting of something over two sections, to respondents' predecessors in interest, they reserved an irregular tract of land containing some fifty acres, cut out of the east side of the main portion of the land conveyed, and immediately adjacent to the land purchased by John Urquhart from the Northern Pacific Railway Company. The land purchased from the Northern Pacific Railway Company, together with this irregularly shaped tract of land, was conveyed to appellants in the year 1925, and it is this land which is now being irrigated by appellant.

Over two hundred acres of the main body of the land formerly owned by the Urquharts was bottom

land through which Crab Creek made its way. Originally the land seems to have been rather marshy, and beginning some fifty years ago, the Urquharts had constructed certain drainage ditches with the idea of getting rid of the surplus water and reclaiming the land to such an extent that they might be able to make it good hay land by putting in clover, red top and timothy in place of the wild grasses.

Thereafter, from time to time during the dry season, these drainage ditches were used to divert water from Crab Creek to irrigate this bottom land. Thereafter George Urquhart, who seems to have been the leading spirit in the enterprise, conceived the idea of pumping water from Crab Creek and putting it upon some of the upland and raising apples, and it was because of Donald Urquhart's opposition to this plan that the original partnership existing between George and Donald Urquhart was dissolved in 1895. The plans for pumping seem to have been followed in so far as it affected certain lands not here in controversy. In 1916 a pump was installed for the purpose of irrigating the land now owned by appellant. This was some six years after the Urquharts had sold the land which the respondents now hold, and which includes the bottom land through which Crab Creek originally flowed.

The pump which supplies the water to appellant's land is, as shown by the exhibits in the case, about eighty rods down the creek from the west line of respondents' property. In the year when this controversy arose, the respondents were diverting all of the water of the creek for the purpose of irrigating their hay lands, so that no water was permitted to go down the creek to be used by appellant's pump.

It is conceded in this case that appellant claims no right by virtue of appropriation. Appel-

lant does, however, claim to be a riparian owner. An examination of the exhibits showing the actual location of the land in question clearly indicates that, as to the land purchased from the Northern Pacific Railway Company, the right to irrigate which is now claimed, the creek at no place touches it; and as to the irregularly shaped tract of land abutting thereon and which was carved out of the original Urquhart holdings, the creek at no place seems to touch that. Other land between the bed of the creek and the lands in question belonging to appellant seems to have been thereafter acquired by appellant, but this cannot make the land in question riparian. When the irregularly shaped tract of land carved out of the original holdings of the Urquharts was detached from the remainder of the land which had been riparian, it lost its riparian character. The tract of land purchased from the Northern Pacific Railway Company, not having been riparian land at the time title was acquired, could not be made such by thereafter acquiring title to the land lying between.

"The evidence also supports the finding that the land irrigated by the defendant does not abut upon, or extend to, the river. If the owner of a tract abutting on a stream conveys to another a part of the land not contiguous to the stream, he thereby cuts off the part so conveyed, from all participation in the use of the stream and from riparian rights therein, unless the conveyance declares the contrary. Land thus conveyed and severed from the stream can never regain the riparian right, although it may thereafter be reconveyed to the person who owns the part abutting on the stream, so that the two tracts are again held in one ownership. *Boehmer v. Big Rock C. I. Dist.*, 117 Cal. 26, 48 Pac. 908; *Alta Land Co. v. Hancock,* 85 Cal. 229, 24 Pac. 645, 20 Am. St. Rep. 217; *Lux v. Haggin,* 69 Cal. 424, 10 Pac. 674; *Watkins L. Co. v. Clements,* 98 Tex. 578, 86 S. W. 738, 107 Am. St. Rep. 653; 2

Farnham on Waters, 1572, § 463a.'' *Anaheim Union Water Co. v. Fuller,* 150 Cal. 327, 88 Pac. 978, 11 L. R. A. (N. S.) 1062, together with note.

The California rule seems to be the rule adopted by the State of Texas. See *Watkins Land Co. v. Clements,* 98 Tex. 578, 86 S. W. 733. The same rule is followed by the supreme court of the state of Nebraska. *Crawford Co. v. Hathaway,* 67 Neb. 325, 93 Pac. 781. The state of Oregon seems to be the only state to have laid down a contrary rule. *Jones v. Conn,* 39 Ore. 30, 64 Pac. 855, 65 Pac. 1068, 87 Am. St. 634, 54 L. R. A. 630. This court, in the case of *Hunter Land Co. v. Laugenour,* 140 Wash. 558, 250 Pac. 41, seems to indicate an intention to follow the California rule in determining what constitutes riparian lands.

Appellant seems to contend that, at the time John and George Urquhart owned all of the land in question—both that now owned by appellant and that owned by respondents—there was an intention evidenced on their part to use the water of the creek which they also owned to irrigate all of the land in question, and that, by their course of conduct over a period of years, they evidenced an intention to take the water to the various portions of the land that might need the same. Respondent's predecessors in interest acquired the main body of the Urquhart land in 1910, respondents taking title a short time thereafter. There is a voluminous mass of testimony indicating that respondents have used the water in the same manner and method as it was used by the Urquharts for many years. There is practically uncontradicted testimony in the record indicating that, at the time respondents' predecessors in interest purchased the land now owned by respondents, George Urquhart spent several days with them showing them the plan

they had used in irrigating this land; and we think that the evidence preponderates that this is the same method now being used.

We think that respondents, having purchased all of the riparian lands owned by the Urquhart Brothers, were entitled to use the water in the same way which the Urquhart brothers had for many years used it, Certainly the Urquhart brothers, who continued to own appellant's land for some time after respondents acquired title, could not complain, and appellant is in no better position. None of the deeds from the Urquhart brothers mention the water in any way, or pretend to convey any right or title to water.

We are unable to find from this record that appellant has any right, title or interest of any kind in or to the waters of Crab Creek. On the other hand, respondents are using the waters of Crab Creek as they and their predecessors have used it for a period of fifty years.

Affirmed.

PARKER, TOLMAN, and MITCHELL, JJ., concur.